**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CADDELL CONSTRUCTION CO. (DE), LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-3130 |
| DANMAR LINES, LTD., | § § | |
| Defendant. | § § | |

## ORDER

The defendant, Danmar Lines, LTD, moves to transfer this case to the United States District Court for the Southern District of New York. (Docket Entry No. 9). The plaintiff, Caddell Construction Co. (DE), LLC, objects. (Docket Entry Nos. 15, 16). Based on the pleadings, the motion and response, the briefs, the record, and the applicable law, Danmar's motion to transfer is granted. The reasons for this ruling are set out below.

## I.    Background

Danmar agreed to deliver 28 of Caddell's air handling units from Norfolk, Virginia to a United States Embassy in Kabul, Afghanistan. (Docket Entry No. 1-1 at 3–4). Caddell alleges that its cargo was damaged in transit between Karachi Port, Pakistan and Kabul. *Id.* at 4. Caddell alleges that Danmar breached its contract with Caddell, was negligent, and breached its bailment obligations. (Docket Entry No. 1).

Danmar moved to transfer to the Southern District of New York under 28 U.S.C. § 1404(a) because the bills of lading include a forum-selection clause specifying that as the venue where any claims against Danmar will be determined. (Docket Entry No. 9 at 8–9). The forum-selection clause

states:

> 14.2.   U.S. Carriage - The contract evidenced by or contained in this bill of lading or otherwise arising from the Carriage or in relation to the Goods shall be governed by and construed in accordance with the laws of the United States of America and particularly 28 USC Section 1300 et seq. of US COGSA.  Any claim against the Carrier under this bill of lading or otherwise arising from or in relation to the Services or the Goods shall be determined exclusively by the United States District Court for the Southern District of New York to whose jurisdiction the Merchant irrevocably submits. The Merchant agrees that it shall not institute legal proceedings in any other court and shall indemnify the Carrier for all legal costs and expenses incurred by the Carrier to transfer or to remove a suit filed in another forum.

(Docket Entry No. 9-2 at 15).  Danmar argues that transfer will not cause administrative difficulties, there are no local interests favoring resolution in Texas, and New York federal courts are as familiar with admiralty law as those in Texas.  (Docket Entry No. 9 at 11–14).

Caddell responds that a separate and prior agreement—the "purchase order"—not the bills of lading, controls. (Docket Entry Nos. 15, 16).  The purchase order does not have a forum-selection clause.  Caddell concedes that neither party formally executed the purchase order, (Docket Entry No. 16 at 6), but argues that they operated under its terms and rates.  (Docket Entry No. 16-1 at 5); (Docket Entry No. 16-4 at 13–17).  Caddell asserts that the bills of lading are "mere receipts" because the purchase order governs.  Caddell argues that it "never agreed to the default application of the [bills of lading] to this dispute and was, in fact, never made aware of the alleged default application of the [bills of lading]." (Docket Entry No. 20-1 at 1).  Caddell argues that it had no notice of the terms and conditions because it received a scan of only the front side of the bills of lading.  *Id.* at 1, 5.  Caddell asserts that the consignee, the U.S. Embassy in Kabul, received the originals of the bills of lading, not Caddell.  *Id.* at 2.

Danmar responds that Caddell had notice of the bills of lading terms because Danmar was a licensed non-vessel operating common carrier and had to file its bill of lading form with the United

States Federal Maritime Commission for approval. (Docket Entry No. 27 at 2); (Docket Entry No. 19-1 at ¶ 3); (Docket Entry No. 19-2 at ¶ 3). Danmar argues that this filing made the bill of lading public and put Caddell on constructive notice of its terms and conditions. (Docket Entry 27 at No. 2–3).

## II.     The Legal Standard

A motion to change venue under 28 U.S.C. § 1404(a) is appropriate where venue is proper under 28 U.S.C. § 1391, but where, "[f]or the convenience of parties and witnesses, in the interest of justice," the defendant seeks to transfer the suit to another "district or division where it might have been brought." *Id.* § 1404(a). "[T]he purpose of [§ 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19 (1960)). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir.2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)). "In exercising that discretion, courts are to examine a collection of private and public factors." *Cooper Lighting, LLC v. Kumar*, 2013 WL 5775687, at *9 (S.D. Tex. Oct. 25, 2013).

"The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary

problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quotations and citations omitted).

"[A] forum-selection clause . . . may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579, (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause," and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 581.

## III.   Analysis

### 1.   The Bills of Lading Govern the Parties' Relationship

Caddell's arguments are based on the earlier unexecuted purchase order, not the bills of lading, governing the parties' relationship. (Docket Entry No. 16 at 10 ("In general, bills of lading are contracts of carriage between the shipper and carrier but where the parties' relationship is governed by a second contract, that contract acts as the contract of carriage and bills of lading are 'mere receipts.'")). Caddell cites cases holding that conflicting terms in a bill of lading do not unilaterally modify prior contracts. *See, e.g., Northern Pac. Ry. Co. v. American Trading Co.*, 195 U.S. 439, 462 (1904) ("It is urged that the bill of lading constitutes the sole contract. But there was a plain, valid contract existing between the parties before the lead was shipped, and before any bill of lading was issued.").

Caddell concedes that the purchase order it claims governs the parties' relationship was not executed. (Docket Entry No. 16 at 6–7). Caddell's argument that the parties operated under the purchase order terms and rates is not supported by the record. The evidence Caddell produced shows

that the parties discussed the storage and detention terms, but it does not show that the parties actually operated under those terms. (Docket Entry No. 16-4 at 13–17). When Caddell proposed storage and detention terms, Danmar told Caddell to "[s]tand by on that front... ." *Id.* at 15. No record evidence indicates that Danmar accepted Caddell's proposed storage and detention charges, let alone the rest of the purchase order.

Caddell's claim that it did not see the terms and conditions of the bills of lading does not preclude enforcing the forum-selection clause. First, Danmar provides evidence that its bill of lading form was "publicly filed with and approved for use as a contract of carriage by the U.S. Federal Maritime Commission." (Docket Entry No. 19-1 at ¶ 3); (Docket Entry No. 19-2 at ¶ 3). Caddell does not dispute that the bill of lading form, including terms and conditions, was available publicly. (Docket Entry No. 20-1). Rather, it argues that it "never agreed to the default application" of the bills of lading. *Id.* at 1. But the Fifth Circuit does not require that a shipper receive bill of lading terms and conditions in order to be held to them. A shipper may be held to a clause in a bill of lading "even though the bill of lading [has] not been issued." *Noble Drilling, Inc. v. M/V OSC VLISTDIEP*, 2011 WL 1399243, at *6 (E.D. La. Apr. 12, 2011) (citing *Luckenbach S.S. Co. v. Am. Mills Co.*, 24 F.2d 704 (5th Cir. 1928)). In *Luckenbach*, the carrier's standard bill of lading that exempted the carrier from liability for fire loss was not issued until after a fire destroyed a substantial amount of cargo. 24 F.2d at 705. The Fifth Circuit held that "an implied understanding arose from common business experience that the carrier would issue such bill of lading as it was its custom to issue to shippers in the usual course of its business," and that "a shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business." *Id.*

5

Danmar asserts, and Caddell does not dispute, that the bills of lading contained Danmar's customarily imposed terms and conditions. (Docket Entry No. 19-1 at ¶ 10 ("Consistent with standard practice, Danmar issued its standard Bills of Lading on the form approved by the [Federal Maritime Commission] for the shipment as the governing common contracts of carriage."); (Docket Entry No. 19-2 at ¶ 10). Caddell had constructive notice of the bills of lading terms and conditions, including the forum-selection clause.

## 2.    Transfer to the Southern District of New York is Proper Under § 1404

Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const.*, 134 S. Ct. at 579. "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* (citations omitted). Caddell incorrectly argues that Danmar bears the burden of establishing that transfer is proper. (Docket Entry No. 16 at 13). "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const.*, 134 S. Ct. at 581.

Caddell has not met its burden. It argues that private interest factors weigh against transfer. (Docket Entry No. 16 at 14–15). The Supreme Court has clearly held that "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atl. Marine Const.*, 134 S. Ct. at 852 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.").

Caddell also argues that public interest factors weigh against transfer. (Docket Entry No. 16 at 15–16). It cites court congestion, Texas's interest in the case being heard in one of its districts, and familiarity of the forum with the governing law. *Id.* Public interest factors "rarely defeat a transfer motion." *Atl. Marine Const.*, 134 S. Ct. at 582. Caddell cannot overcome its high burden.

First, although Danmar notes that the median time between filing a complaint and trial is 31.4 months in the Southern District of New York, more than the 21.6-month median in the Southern District of Texas, (Docket Entry No. 9 at 13), this difference does not defeat transfer. Second, Caddell argues that Danmar fails to allege that relevant events occurred in New York. (Docket Entry No. 16 at 16). But the burden is Caddell's, not Danmar's, and Danmar correctly points out that Caddell's original petition does not allege that any harm occurred in Texas. (Docket Entry No. 9 at 13); (Docket Entry No. 1-1). The fact that Danmar maintains an office in Humble, Texas does not create a local interest that overcomes transfer. (Docket Entry No. 16 at 16); (Docket Entry No. 1-1 at ¶ 3). Third, Caddell argues that "Danmar concedes that New York is not necessarily favored over Texas." (Docket Entry No. 16 at 16). But Caddell does not show that Texas is favored over New York. Transfer to the Southern District of New York is proper under § 1404(a).

## IV. Conclusion

The parties' relationship is governed by the bills of lading that contain a forum-selection clause. The defendants motion to transfer, (Docket Entry No. 7), is granted. This case is transferred to the United States District Court for the Southern District of New York.

SIGNED on March 29, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge